**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 12, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

JOSEPH TYLER REED,

     Defendant - Appellant.

No. 24-6241

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 5:23-CR-00409-JD-1)**
_____

Perrin Tourangeau, Assistant Federal Public Defender (Virginia L, Grady, Federal Public Defender, with her on the briefs), Office of the Federal Public Defender, District of Colorado, Denver, Colorado, for Defendant-Appellant.

Julia Elizabeth Barry, Assistant United States Attorney (Robert J. Troester, United States Attorney, and Cole McFerren, Assistant United States Attorney, with her on the brief), Office of the United States Attorney, Western District of Oklahoma, Oklahoma City, Oklahoma, for Plaintiff-Appellee.

_____

Before **HARTZ**, **BACHARACH**, and **ROSSMAN**, Circuit Judges.
_____

**BACHARACH**, Circuit Judge.
_____

This appeal grew out of a traffic stop, a search warrant, two criminal convictions, and concurrent sentences. Legal issues arose from each stage.

The traffic stop took place because the defendant possessed a trailer thought to be stolen. This stop triggered the first issue: Did the officers have a reasonable basis to detain the defendant based on suspicion that the trailer had been stolen? We answer *yes*.

After the traffic stop, the police obtained a warrant to search the defendant's cellphone for evidence of possession of stolen property. This warrant triggered the second issue: Was the warrant overbroad or lacking in particularity based on the lack of a temporal limitation? We answer *no*.

Execution of the warrant yielded images of child pornography, and those images led to convictions for receiving and possessing child pornography. 18 U.S.C. § 2252A(a)(2)(A) (receiving), § 2252A(a)(5)(B) (possessing). These convictions sparked a third issue: Did the district court plainly err by imposing multiplicitous punishments for receiving and possessing the same images of child pornography? We answer *no*.

The convictions resulted in concurrent prison sentences of 210 months. Challenging these sentences, the defendant argues that the district court should have reduced the offense level. This argument triggered a fourth issue: Can we consider the defendant's argument when he failed to make it in district court and resolution would involve a factual inquiry? We answer *no*.

**Challenges to the Convictions**

For the convictions, the defendant challenges the traffic stop and the scope of the search warrant. We reject these challenges.

**1.    A traffic stop leads to a search and convictions.**

The convictions stemmed from the discovery of four pieces of stolen farm equipment in a field leased by the defendant. The police suspected that a fifth item, a trailer, had also been stolen. But the trailer's vehicle identification number didn't match any reported thefts. Still, the police remained suspicious; so they installed a GPS device on the trailer.

Days later, the police learned that the defendant was towing the trailer. At some point, the GPS device was removed; and the police stopped the defendant in his truck. The truck had the wrong tag, and the defendant explained the discrepancy. The police continued to investigate and obtained the defendant's cellphone, which contained images of child pornography.

The discovery of these images led the government to charge the defendant with receiving and possessing child pornography. Faced with these charges, the defendant asked the district court to suppress evidence of the images, arguing that (1) the police lacked reasonable suspicion to extend the traffic stop and (2) the search warrant was overbroad and lacked particularity. The district court denied the motion to suppress, and the

3

defendant was convicted of receiving and possessing child pornography. 18 U.S.C. § 2252A(a)(2)(A), § 2252A(a)(5)(B).

**2.    The police had reasonable suspicion that the defendant was possessing stolen property.**

The defendant argues that the police prolonged the traffic stop for the mismatched tag in order to see whether the trailer had been stolen. We assume for the sake of argument that the police took longer than necessary to investigate the mismatched tag. Still, the traffic stop would be lawful if the police had a reasonable basis to suspect that the trailer had been stolen. *See United States v. Leon*, 80 F.4th 1160, 1165 (10th Cir. 2023). This suspicion would be reasonable if the police had an objective and particularized basis to investigate a possible theft of the trailer. *United States v. Daniels*, 101 F.4th 770, 776 (10th Cir. 2024).

The district court concluded that the suspicion was reasonable, and we conduct de novo review of that conclusion. *United States v. Frazier*, 30 F.4th 1165, 1172 (10th Cir. 2022). In conducting that review, we view the evidence favorably to the government. *Id.* This evidence includes

- the presence of the trailer, just five days earlier, with four other pieces of stolen farm equipment and

- the removal of the GPS device on the trailer.[1]

---

[1]    The government seeks to bolster this evidence with the defendant's comment that he couldn't produce the bill of sale because it was "somewhere." Appellee's Resp. Br. at 31 (quoting R. vol. 4, Exh. 3 at 14:05–14:12). But the government didn't rely on this comment in district

This combination of evidence provided objective reasons to suspect a theft of the trailer. *See United States v. Sanchez*, 13 F.4th 1063, 1071 (10th Cir. 2021) (concluding that officers had reasonable suspicion to believe a vehicle was stolen in part because they had earlier recovered stolen vehicles from the same lot).

Granted, that evidence wasn't conclusive based on the prior check of the vehicle identification number and the possibility of an innocent reason to remove the GPS device.

Five days before the traffic stop, police officers had checked the vehicle identification number and it hadn't matched any reported thefts. That information could undercut suspicion of theft, but wouldn't be conclusive because the police didn't know

- if the owner had reported a theft within the five-day period or

- if an officer had made a mistake in transcribing or checking the vehicle identification number.[2]

In addition, someone could have had innocent reasons for removing the GPS device. It wasn't identified as police property, and even innocent

court. For the sake of argument, we disregard the defendant's comment about the bill of sale.

[2]    In his reply brief, the defendant argues that the passage of five days was "ample time" for someone to report a theft of the trailer. Appellant's Reply Br. at 3. This argument assumes that an officer had checked the vehicle identification number during the five-day period. But the defendant elsewhere says that the police didn't re-run the vehicle identification number during the five-day period. *Id.* at 2.

individuals may dislike being tracked by an unknown person for unknown reasons. Still, the discovery of the GPS device suggested close inspection of the trailer. And the defendant didn't just throw the device away; an acquaintance took it with him. These efforts suggested that the defendant was not only worried about his privacy, like anyone else, but might also have been trying to trick whoever was following his movements. *See United States v. Pettit*, 785 F.3d 1374, 1379 (10th Cir. 2015) (stating that reasonable suspicion may exist even if the officer can't rule out an innocent explanation).

Viewing the evidence favorably to the government, we conclude that the police had reasonable suspicion to investigate a possible theft of the trailer. The trailer had been found with four other pieces of stolen farm equipment, and someone had inspected the trailer closely enough to find the GPS device. Based on this evidence, the district court didn't err in finding reasonable suspicion for the traffic stop.

**3.    The search warrant wasn't too general or overbroad.**

The defendant also challenges the validity of the search warrant, arguing that it was overbroad and lacked particularity. The district court rejected the challenge, and we conduct de novo review. *United States v. Santiago*, 135 F.4th 1235, 1239 (10th Cir. 2025).

6

a. **The search warrant was particularized by the limitation to possession of stolen property.**

A search warrant must particularly describe the item to be searched. *United States v. Otero*, 563 F.3d 1127, 1131 (10th Cir. 2009). The defendant argues that the description in the warrant wasn't particularized because it omitted a temporal limitation. Irrespective of a temporal limitation, however, a search warrant's description is considered *particularized* if it targets evidence of a specific crime. *United States v. Palms*, 21 F.4th 689, 698–99 (10th Cir. 2021). And the warrant here covered only evidence bearing on the possession of stolen property.[3] So the warrant was particularized by targeting evidence of a specific crime.

b. **The absence of a temporal limitation didn't render the search warrant overbroad.**

Even if the warrant were particularized, however, it could be overbroad if it had covered property disconnected to the showing of probable cause. *United States v. Leary*, 846 F.2d 592, 605 (10th Cir. 1988). The defendant argues that the search warrant was too broad because

- it omitted a temporal limitation and

- a temporal limitation was feasible because the police knew when the five pieces of equipment had been stolen.

The problem with this argument is that the police couldn't have known when the defendant had begun possessing stolen equipment.

---

[3]    The defendant concedes this limitation in the warrant.

7

In urging the need for a temporal limitation, the defendant distinguishes between continuing crimes and crimes that take place at a discrete time. When a crime occurs at a discrete time, the absence of a temporal limitation may render a search warrant overly broad. *Armendariz v. City of Colo. Springs*, 169 F.4th 1036, 1062 (10th Cir. 2026). On the other hand, the defendant concedes that temporal limitations may be impractical when probable cause exists for an ongoing scheme, like trafficking in drugs or possessing child pornography.

The defendant characterizes the crime here as a discrete event rather than an ongoing scheme. But the police presented evidence that the defendant had stored stolen property in the field over a period of eight weeks rather than at a discrete time.

Despite the ongoing nature of the alleged crime, the defendant argues that the warrant needed a temporal restriction because the police knew when the owners had reported the thefts. But some of those thefts had preceded the defendant's use of the field. For example, the police knew that two pieces of equipment had been reported stolen over a month before the defendant started using the field.

With this knowledge, the police could reasonably infer that the defendant had stolen the equipment. *See United States v. Luman*, 624 F.2d 152, 155 (10th Cir. 1980) (stating that "unexplained possession of recently stolen property is sufficient to support a finding that possessor himself

stole the property in the first instance"). And if the defendant had stolen the two pieces of equipment, he would have needed some place to keep the equipment before getting access to the field.

But the police didn't know

- where the defendant had been storing the stolen property or

- when he had begun using other locations for storage.

So the available information didn't tell the police (1) when the alleged scheme had started or (2) whether the scheme had extended beyond the equipment found in the field. Absent such information, a temporal limitation for the search warrant would have been arbitrary. *See United States v. Banks*, 556 F.3d 967, 973 (9th Cir. 2009) (concluding that the lack of a time frame didn't render a search warrant "insufficiently particular" because the record didn't show that the government had known the duration of the crime); *United States v. Shilling*, 826 F.2d 1365, 1369 (4th Cir. 1987) (per curiam) (concluding that a search warrant was valid notwithstanding the omission of specific time periods because the government couldn't have known the pertinent dates), *abrogated on other grounds by Staples v. United States*, 511 U.S. 600 (1994).

Granted, the search warrant could conceivably have included a temporal limitation untethered to the thefts of the five pieces of equipment in the field. But the defendant doesn't identify such a temporal limitation, and none is readily apparent given the uncertainty over when the scheme

9

had begun. *See United States v. Burgess*, 576 F.3d 1078, 1095 (10th Cir. 2009) (rejecting a defendant's challenge to overbreadth of a search warrant because the defendant had failed to provide another methodology that would allow a thorough search for evidence of drug trafficking).

The defendant points out that we've recognized the need for a temporal limitation when the suspected crime

- was too broad to protect against a general search or

- took place at a discrete time.

For example, we considered a search warrant that allowed an intrusive search of an Apple account bearing on a marital relationship. *United States v. Tew*, 171 F.4th 1210 (10th Cir. 2026). That warrant authorized review of a trove of data because the information in the Apple account spanned multiple devices. *Id.* at 1226–27. The warrant limited the search to specific offenses, but these offenses were "extremely broad," including (1) destruction, alteration, or falsification of business records, (2) money laundering, and (3) conspiracy. *Id.* at 1231. Coupled with the expanse of these crimes was the privacy interest: The husband and wife had pointed the finger at each other, rendering the limitation in the warrant virtually meaningless because the conspiracy count "would apparently allow the Government to seize all evidence about [the couple's] marital relations contained in [the wife's] Apple account on a theory that the intricacies of their marital relationship may have motivated the crime." *Id.*

10

We also held that a warrant was too broad because it involved a wide-ranging search based on a single discrete incident. *United States v. Leary*, 846 F.2d 592, 601–04 (10th Cir. 1988). There the government had probable cause to believe that an export company had unlawfully exported a receiver. *Id.* at 594, 604. Based on this information, the government obtained a search warrant for virtually all of the business's records involving a possible violation of the Export Administration Act, 50 U.S.C. § 2410, *et seq*. *Id.* at 594. We held that the warrant was overbroad because it authorized a search of "virtually every document that one might expect to find in a modern export company's office." *Id.* at 602. The sweep was unwarranted because

- the underlying export law was broad and

- the showing of probable cause involved only a single discrete transaction.

*Id.* at 601–04.[4] These circumstances don't exist here.

The defendant doesn't question the existence of a meaningful limitation based on the scope of the underlying offense, possession of

---

[4] We similarly held that a temporal limitation was required when a warrant allowed the search and seizure of all electronic information containing a set of keywords. *Armendariz v. City of Colo. Springs*, 169 F.4th 1036, 1058–59 (10th Cir. 2026); *accord United States v. Holcomb*, 2025 WL 5088357, at *7 (9th Cir. July 17, 2026) (per curiam; to be published) (concluding that a search warrant covered too much time because the investigation involved "a single event that took place in a particular location on a specific date").

stolen property. *See* Challenges to the Convictions—Part 3(c), below. And the defendant acknowledges that search warrants don't typically require time limitations for continuing crimes—like possession of child pornography and drug distribution. *See* p. 8, above.

Here the showing of probable cause involved a continuing crime of possessing stolen property. And a temporal limitation would have been arbitrary because the police didn't know how long the defendant had been stealing or possessing the equipment.

But even if a temporal limitation would have been feasible, the defendant doesn't provide a viable alternative. He assumes that the police knew that the scheme had begun with the first of the reported thefts. But some of the thefts had preceded the defendant's use of the field, creating uncertainty over when the scheme had begun. Given that uncertainty and the absence of a feasible alternative, the omission of a temporal limitation didn't render the search warrant overbroad.

  **c.**  **The search warrant didn't need narrowing to the kinds of property found in the field.**

In his opening brief, the defendant includes a sentence suggesting that the warrant was too broad because

- it covered possession of stolen property of any kind and

- the state has a separate law governing the possession of stolen property that constitutes farm equipment.

Okla. Stat. tit. 21, § 1713.1; *see* Appellant's Opening Br. at 36.[5] The single sentence in the opening brief doesn't adequately develop a separate argument on overbreadth.

Granted, the defendant elaborates on this argument in his reply brief. But the reply brief was too late to develop an argument for the first time: The defendant needed to include this argument in his motion to suppress, and we don't typically entertain new appellate arguments asserted for the first time in a reply brief. *See United States v. Vance*, 893 F.3d 763, 769 (10th Cir. 2018) (concluding that the defendant waived an argument for suppression of evidence by failing to include the issue in a pretrial motion to suppress); *United States v. Fernandez-Barron*, 950 F.3d 655, 663 (10th Cir. 2019) (concluding that the appellant waived an argument by omitting it in his opening brief); *see also* p. 18 n.7, below (discussing waiver of an issue that could have been raised in a pretrial motion).

But even if the argument hadn't been waived, it would be invalid because the defendant doesn't explain (1) why a narrowing of the crime was needed just because the defendant might have violated a separate

---

[5]    The sentence states: "Even if there were probable cause to search for evidence of stolen property beyond the five tractors and trailers at issue (there was not), it would have extended only to similar types of stolen farm equipment, like tractors and trailers." Appellant's Opening Br. at 36. For this sentence, the defendant adds a footnote: "In fact, Oklahoma specifically criminalizes the purchase or receipt of stolen farm or construction equipment under Okla. Stat. tit. 21 § 1713.1." *Id.* at 36 n.7.

criminal law involving stolen farm equipment or (2) how officers would have conducted the search differently if the warrant had related only to stolen farm equipment (rather than any kind of stolen property). *See United States v. Robertson*, 21 F.3d 1030, 1033–34 (10th Cir. 1994) (rejecting an overbreadth challenge even though the description in the warrant could have been more specific because the more specific language wouldn't provide greater guidance to the agents in identifying the things to be seized).

Given the waiver and deficiencies in the defendant's explanation, the reference to possession of stolen property didn't render the warrant overbroad even though the state had established a separate crime for buying or receiving stolen farm equipment.

### Challenges to the Sentences

Following the convictions for receiving and possessing child pornography, the district court imposed concurrent sentences of 210 months' imprisonment. The defendant characterizes the sentences as multiplicitous and based on a misapplication of the guidelines. We reject these characterizations.

1. **The district court didn't plainly err in sentencing the defendant for receiving and possessing child pornography.**

The defendant was sentenced for receiving child pornography and for possessing it. Possession of child pornography is a lesser-included offense

of receipt, preventing punishment of both offenses for the same image. *United States v. Benoit*, 713 F.3d 1, 6–7, 15–16 (10th Cir. 2013). On appeal, the defendant argues that the sentences for receipt and possession were multiplicitous because the offenses involved the same images of child pornography.

The defendant admits that he failed to present this argument in district court, but the parties disagree on the impact: The defendant urges review for plain error, arguing that the failure to present the argument resulted in its forfeiture rather than waiver; the government argues that the defendant waived the argument, which would prevent review even under the plain-error standard. *See United States v. Rosales-Miranda*, 755 F.3d 1253, 1257 (10th Cir. 2014) (stating that "forfeiture triggers plain-error review"); *Hancock v. Trammell*, 798 F.3d 1002, 1111 n.3 (10th Cir. 2015) ("When a waiver takes place, we do not consider the claim at all, even under the forgiving plain-error standard.").

We assume for the sake of argument that the defendant is right in treating the issue as a forfeiture and arguing that we should apply the plain-error standard. Under that standard, the threshold issue is whether the district court erred. *United States v. Venjohn*, 104 F.4th 179, 183 (10th Cir. 2024). An error would exist if the district court had punished the defendant for receiving and possessing the same images. *United States v. Benoit*, 713 F.3d 1, 6–7, 15–16 (10th Cir. 2013). If an error has taken

15

place, we would consider whether the error would be clear or obvious. *United States v. Finnesy*, 953 F.3d 675, 684 (10th Cir. 2020).

To determine whether the court clearly or obviously erred, we consider the entire record. *See Benoit*, 713 F.3d at 17 ("In determining whether the charges against [the defendant] were multiplicitous, we may consider the entire record."). So we consider whether the record clearly or obviously shows punishment for receiving and possessing the same images of child pornography. *See United States v. Robertson*, 946 F.3d 1168, 1173 (10th Cir. 2020). Punishment for both crimes can't be clear or obvious when the record is ambiguous on the images underlying the charges. *Id.*[6] So the defendant can prevail only if the record unambiguously shows that he was convicted of receiving and possessing the same images. *United States v. Sturm*, 673 F.3d 1274, 1288 (10th Cir. 2012). So the defendant wouldn't prevail if the record could reasonably reflect punishment for receiving "at least one image of child pornography" and for "possessing at least one different image of child pornography." *Id.*; *accord United States v. Schnittker*, 807 F.3d 77, 83 (4th Cir. 2015) (rejecting a multiplicity

---

[6]     The defendant would also have to establish that the error affected his substantial rights and seriously affected the fairness, integrity or public reputation of judicial proceedings. *United States v. Robertson*, 946 F.3d 1168, 1173 (10th Cir. 2020). Because we conclude that a potential error wouldn't be clear or obvious, we need not address the possible effect on substantial rights or the proceedings' fairness, integrity, or public reputation.

16

challenge when the defendant possessed multiple "images or videos of child pornography, at least some of which did not ground the receipt conviction").

The defendant argues that his punishments were multiplicitous because

- the indictment had used identical language for the charges of receipt and possession,

- the government had sometimes referred generally to "child pornography," and

- the district court relied on the same evidence to find Mr. Reed guilty of both receipt and possession.

We've held that a court erred in convicting a defendant for receipt and possession of child pornography when

- the indictment had used identical language in both counts,

- both the prosecutor and the defense attorney had stated that the two counts were based on the "same" images, and

- the jury hadn't been instructed on the need to base the two counts on different images.

*United States v. Benoit*, 713 F.3d 1, 17 (10th Cir. 2013).

Granted, the indictment here contained identical language for both counts. But the challenge here involves multiplicitous punishments, and those punishments stem from the district court's findings of guilt rather

17

than the wording in the indictments.[7] So the defendant concedes that the

district court's findings are the most probative evidence on the issue of

multiplicity. Appellant's Reply Br. at 18. That evidence weighs against the

defendant because the district court referred to different images when

finding guilt.

For example, in finding the defendant guilty of possession, the court

described images of "prepubescent girls spreading their legs without

clothes on." R. vol. 3, at 289. That description matches an image depicted

---

[7]    To challenge an indictment (rather than a sentence) based on
multiplicity, the defendant must ordinarily file a pretrial motion. Fed. R.
Crim. P. 12(b)(3)(B)(ii) (2022); *see United States v. Bowline*, 917 F.3d
1227, 1230–38 (10th Cir. 2019).

The defendant points out that we have applied plain error when the
defendant failed to file a pretrial challenge to multiplicity. *United States v.
Yurek*, 925 F.3d 423, 438 (10th Cir. 2019). There, however, the parties
agreed that the plain-error standard applied. Defendant-Appellant's
Opening Br. at 29, *United States v. Yurek*, No. 18-1134 (10th Cir. Oct. 5,
2018) (urging plain-error review on multiplicity because of the defendant's
failure to raise the issue in a pretrial motion); United States' Answer Br. at
35, *United States v. Yurek*, No. 18-1134 (10th Cir. Dec. 3, 2018) (arguing
that we should apply the plain-error standard based on the defendant's
failure to raise multiplicity in district court). Given the parties' agreement
on the standard, we conducted plain-error review without addressing the
impact of the federal rules or our precedent characterizing the failure to
file a pretrial motion as a waiver. *See Lowe v. Raemisch*, 864 F.3d 1205,
1209 (10th Cir. 2017) (stating that if an issue isn't argued, "the decision
does not constitute a precedent to be followed" (quoting *United Food &
Comm'l Workers Union, Local 1564 v. Albertson's, Inc.*, 207 F.3d 1193,
1199 (10th Cir. 2000))). But the parties have briefed the issue here, and
multiplicity challenges to indictments are waived when omitted in a
pretrial motion. Fed. R. Crim. P. 12(b)(3)(B)(ii) (2022); *see Bowline*, 917
F.3d at 1230–38.

18

in Government's Exhibit 27, which showed a "prepubescent girl showing her vagina . . . spreading her legs." *Id.* at 246. And in closing argument, the government referred to its Exhibit 27 when discussing the possession charge. *Id.* at 271–73. On the other hand, neither the prosecutor nor the court mentioned this image or exhibit when discussing the receipt count. *See id.* at 286–87 (district court's findings on receipt); *id.* at 275 (government's closing argument on receipt). So the record doesn't clearly or obviously show that the defendant was punished for both counts based on Government's Exhibit 27; the exhibit appears to support only the possession count. *See United States v. Schnittker,* 807 F.3d 77, 83 (4th Cir. 2015) (rejecting a multiplicity challenge when the district court "made clear that it was relying" on specific videos to find guilt for receipt and the defendant admittedly possessed over 1,000 images that could have supported guilt for possession).

On the possession count, the government also relied on its Exhibit 41. R. vol. 3, at 271–73. That exhibit depicted "a child masturbating." *Id.* at 250. And in finding the defendant guilty of possession, the court referred to "images of children masturbating." *Id.* at 289. On the other hand, neither the government nor the court mentioned Government's Exhibit 41 or its contents when discussing the receipt count. *See id.* at 286–87 (district court's findings on receipt); *id.* at 275 (government's

19

closing argument on receipt). So the image in Government's Exhibit 41 doesn't clearly underlie both counts.

The government also pointed to its Exhibit 40 for the count on possession, but not receipt. *Id.* at 271–73.[8] *See United States v. Halliday*, 672 F.3d 462, 471 (7th Cir. 2012) (concluding that the possibility of multiplicitous charges would have been harmless in light of the government's closing argument and trial evidence supporting separate foundations for the convictions).

The defendant downplays the government's distinction between the counts, stating that the government's closing argument referred only broadly to Government's Exhibits 27, 40, and 41 as depictions of prepubescent minors rather than as evidence confined to the possession count. In this part of the closing argument, however, the government was referring to the elements of "Count 2," which was the possession count. *Id.* at 271–273. And the defendant doesn't dispute that the exhibits were mentioned only during the discussion of the possession count (and not during the discussion of the receipt count).

The government and the court also referred to particular images when discussing the receipt count. For example, the government relied there on its Exhibit 30, *id.* at 275, which depicted

---

[8]     This exhibit depicted a "prepubescent girl whose arms and legs are bound" while "naked." R. vol. 3, at 249–50.

- "a girl hanging from a staircase, and a man . . . performing oral sex on her" and

- "a little girl being made to perform oral sex on an adult male."

*Id.* at 229–30.

The court thus explained its finding of guilt on the receipt charge by referring to images of "adult males performing oral sex on prepubescent girls" and "prepubescent girls performing oral sex on adult males." *Id.* at 287. On the other hand, neither the government nor the district court referred to Government's Exhibit 30 when discussing the possession count. *See id.* at 289 (district court's findings on possession); *id.* at 271–73 (government's closing argument on possession). So the finding of guilt on the two counts again rested on different images.

The government also used its Exhibit 32 to prove receipt, but not possession. *Id.* 274–75. This exhibit contained multiple folders of downloads and links for the defendant to view child pornography, *id.* at 257–259.[9] So it isn't clear or obvious that Government's Exhibit 32 underlies both charges.

Granted, the government mentioned the exhibits without specifically telling the court how it could use the exhibits. And the court stated that it was basing its findings on each count on the "evidence," the "exhibits," or

---

[9]    The same is true for Government's Exhibit 31, although this exhibit did not contain images of child pornography. R. vol. 3, at 256.

the "testimony." *Id.* at 287–89. At most, however, these statements suggest ambiguity rather than clear or obvious reliance on the same images for both counts.[10] *See United States v. Robertson*, 946 F.3d 1168, 1173 (10th Cir. 2020) (stating that ambiguity in the district court's statement shows that an error would not have been clear or obvious under the plain-error standard). So the defendant hasn't shown a clear or obvious error involving multiplicitous sentences.

**2.    The district court didn't plainly err in declining to apply a mitigating adjustment.**

The defendant also argues that the district court should have reduced the guideline range by two levels. But he didn't make this argument in district court; so we apply the plain-error standard. *United States v. Berryhill*, 140 F.4th 1287, 1293 (10th Cir. 2025). Under this standard, the defendant must show not only that the district court erred but also that the error is obvious and prejudicial. *United States v. Eckstein*, 163 F.4th 1326, 1328 (10th Cir. 2026).

The guidelines allow a two-level reduction when a defendant received or possessed child pornography without intending to distribute the images. U.S.S.G. § 2G2.2(b)(1). The presentence report didn't flag this

---

[10]    In urging the district court to find both receipt and possession, the government also referred to its Exhibit 28, which contained 108 pages of a website containing child pornography. R. vol. 3, at 271–75; *see also id.* at 254–55. But that overlap doesn't clearly or obviously establish multiplicitous punishments. *See* p. 16, above.

issue, and the parties didn't address it in district court. So the record is silent on whether the defendant intended to distribute the pornographic images. The defendant argues that silence of the record would prevent the court from inferring an intent to distribute the images. But the defendant bore the burden. *See United States v. Kirk*, 894 F.2d 1162, 1164 (10th Cir. 1990) (requiring defendants to prove facts warranting sentence reductions).[11]

Given the defendant's failure to urge a reduction in the guideline range, the prosecutor had no reason to present evidence of an intent to distribute the images. The defendant was charged with receiving and possessing the images, not distributing them. And the defendant hadn't suggested a right to a downward adjustment based on the absence of an intent to distribute the images. The defendant's silence on the issue led to an incomplete record, which prevents a finding of plain error. *See United States v. Frost*, 684 F.3d 963, 977 (10th Cir. 2012) ("Where the determinative facts are missing from the record due to the defendant's

---

[11]    The defendant argues that the burden fell on the government to prove that he wasn't entitled to the deduction, citing *United States v. Martinez*, 2024 WL 3887290 (10th Cir. Aug. 21, 2024) (unpub.). But that case applied "our rule that '[t]he government shall bear the burden of proof for sentence *increases* and the defendant shall bear the burden of proof for sentence *decreases*.'" *Id.* at *2 (quoting *United States v. Kirk*, 894 F.2d 1162, 1164 (10th Cir. 1990)) (emphasis added). The defendant invokes a guideline to "decrease" his offense level. U.S.S.G. § 2G2.2(b)(1). So he bore the burden of proof.

23

failure to make a timely objection, we will not find plain error based on the possibility that better factual development would have made the error clear."); *see also United States v. Saucedo*, 950 F.2d 1508, 1518 (10th Cir. 1991) ("A factual dispute concerning the applicability of a particular guideline, not brought to the attention of the district court, does not rise to the level of plain error."). As a result, the district court didn't plainly err in declining to reduce the offense level.

## Conclusion

We affirm the convictions and the sentences.

The police didn't violate the Fourth Amendment by stopping the defendant and investigating the possibility that the trailer was stolen. The trailer had been parked with four other stolen items, and the police had reason to question the prior inquiry about the vehicle identification number.

The search warrant for the cellphone wasn't overbroad or lacking in particularity. The warrant restricted the search to electronic information bearing on the possession of stolen property, which was a crime that could have continued for an indefinite period. So the warrant comported with the Fourth Amendment.

Finally the district court didn't plainly impose multiplicitous sentences, and we lack a meaningful factual record to assess the availability of a downward adjustment.